UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JANEKA CREESE and DEBRA CREESE,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF NEW YORK *et al.*,<br><br>Defendants. | **17-cv-3659 (ARR) (ST)**<br><br><br>**Not for electronic or print publication**<br><br><br>**Opinion & Order** |

ROSS, United States District Judge:

Plaintiffs, Janeka Creese and Debra Creese, bring this civil-rights action under 42 U.S.C. § 1983 and New York state common law against the City of New York, Police Officer Jelinson Martinez, and several unnamed employees of the New York City Police Department ("NYPD") (collectively, "defendants"). Plaintiffs allege that they were falsely arrested, maliciously prosecuted, and deprived of their right to a fair trial as a result of defendants' actions in the early-morning hours of March 19, 2016. Defendants have moved for summary judgment on all of plaintiffs' claims. For the reasons explained below, defendants' motion is granted in full, and plaintiffs' claims are hereby dismissed.

## BACKGROUND

At 10:00 P.M. on March 18, 2016, Janeka Creese began her shift as a bartender at Café Omar, a bar and restaurant located in Brooklyn.[1] *See* Rameau Decl. Ex. 1, at 17:9–18:7, 19:11–12, ECF No. 40-1 ("J. Creese Dep."); Defs.' 56.1 ¶ 11, ECF No. 37. Café Omar has a large open space that can accommodate more than 200 people. J. Creese Dep. 20:2–8. Inside, there is one bar, which is located in the back-right corner of the establishment. *Id.* at 20:9–13. On March 18, 2016, there

---

[1] Unless otherwise noted, the facts set forth herein are undisputed.

were two security guards standing outside the front door of Café Omar. *Id.* at 21:2–9. Among other things, the security guards were responsible for checking identification cards and providing gold and black wristbands to all patrons who were at least 21-years-old. *Id.* at 23:5–24:10.

After arriving at the bar, Janeka[2] began serving drinks, including alcoholic beverages, to patrons of Café Omar. *Id.* at 24:19–25:1, 26:18–27:13; *see also* Defs.' 56.1 ¶ 11. Shortly before midnight, Janeka called her mother, Debra, and asked if Debra could come to the bar to bring her dinner. J. Creese Dep. 27:14–25; *see also* Rameau Decl. Ex. 2, at 18:4–19:18, ECF No. 40-2 ("D. Creese Dep."); Pls.' 56.1 ¶ 29, ECF No. 39. Debra arrived with the food and then decided to stay at Café Omar to keep her daughter company while she worked. Pls.' 56.1 ¶ 30. Debra sat just outside of the bar, near where Janeka was working. *See* J. Creese Dep. 28:13–30:8. Janeka remained inside the bar, and she continued to serve customers alcohol and other drinks after her mother arrived. *Id.* at 30:3–8; D. Creese Dep. 26:5–7. According to both Janeka and Debra, Janeka was the only bartender working at Café Omar at the time. *See* J. Creese Dep. at 25:8–12; D. Creese Dep. 20:14–21:11, 22:6–15. Debra maintains that she did not help her daughter with her bartending responsibilities at any point that night, and she testified that she has never worked for Café Omar in any capacity. D. Creese Dep. 20:23–21:11.

Soon after Debra arrived, a group of police officers entered Café Omar and walked towards the bar. J. Creese Dep. 30:25–31:17. Officer Jelinson Martinez, who testified that he arrived at Café Omar to conduct a business inspection, was one of the officers in the group. Defs.' 56.1 ¶¶ 1–2; *see also* Rameau Decl. Ex. 3, at 50:14–51:24, 81:25–82:24, ECF No. 40-3 ("Martinez Dep."). Martinez asked the DJ to turn off the music and turn on the lights, and he walked over to the bar. Martinez Dep. 68:5-69:3. He entered the bar area, where Janeka was standing, and asked to see

---

[2] For simplicity, I refer to both plaintiffs by their first name throughout this opinion and order.

Café Omar's liquor license. *See* J. Creese Dep. 38:9–25; *see also* Defs.' 56.1 ¶ 12. Martinez testified that he saw two women *behind* the bar, and he told them both to stop serving drinks until he completed his inspection. Martinez Dep. 65:20–66:2, 69:2–8, 94:18–95:9; *see also* Defs.' 56.1 ¶ 10. During this exchange, however, Debra maintains that she remained seated outside of the bar, and she insists that she did not step foot inside the bar at any point. *See* D. Creese Dep. at 25:19–26:15; *see also* J. Creese Dep. 39:13–17; Pls.' 56.1 Resp. ¶ 17, ECF No. 39. Janeka also testified that none of the officers spoke directly with her mother at this time. J. Creese Dep. 39:18–19. Despite these disputes, the parties appear to agree that there were no other patrons in the immediate vicinity of the bar at the time that Martinez spoke with Janeka. *See* Defs.' 56.1 ¶ 17; *see also* D. Creese Dep. 32:24–33:15.

Martinez completed his review of the liquor license and exited the bar. J. Creese Dep. 39:6–12. He began asking patrons to leave the area surrounding the bar so that he could get a proper count of the number of people inside Café Omar. Martinez Dep. 70:3–14, 73:4–75:19, 79:23–80:9. Around this time, the bar area was relatively empty, and many of the patrons who were near the bar began to disperse when Martinez told them to leave. *See* D. Creese Dep. 33:9–34:8; Martinez Dep. 79:20–80:9. As Martinez walked around the establishment, he noticed that there was a "young crowd" at Café Omar that night. Martinez Dep. 80:4–13; *see also* Defs.' 56.1 ¶ 3. In particular, he noticed two young men near the bar who were holding drinks and "looked way too young to have those drinks." Martinez Dep. 86:3–9; Defs.' 56.1 ¶ 4. The two young men, N.D. and his cousin B.A., were standing approximately 15 feet away from the bar. Martinez Dep. 86:18–87:6; Rameau Decl. Ex. 4, at 8:11–13, 10:25–11:9, ECF No. 40-4 ("N.D. Dep."); Defs.' 56.1 ¶¶ 4–5. It is undisputed that both N.D. and B.A. were under 21-years-old at the time, and that both

young men were holding cups of alcohol. *See* Defs.' 56.1 ¶¶ 4–7; *see also* Jaffe Decl. Ex. C, ECF No. 36-3 ("N.D. Aff. of Sale"); Jaffe Decl., Ex. D, ECF No. 36-4 ("B.A. Aff. of Sale").

N.D., who sat for a deposition in conjunction with this lawsuit on July 5, 2018, testified that he did not receive a wristband from the security guards before he entered Café Omar. N.D. Dep. 8:20–9:15. It is undisputed, however, that he came into possession of an alcoholic beverage at some point that night, though at the time of his deposition he did not recall how he got the liquor. *Id.* at 9:19–10:8.[3] After Martinez noticed N.D. and B.A., he asked them their age. Martinez Dep. 90:20–91:9. Both young men admitted that they were under 21. *Id.* at 90:25–91:9, 94:7–17. According to Martinez, he also asked N.D. and B.A. how they got their drinks. *Id.* 91:11–12, 94:19–20. Martinez testified that N.D. responded by "point[ing] to the bar and the person behind the bar," indicating that the bartender served him the alcohol. *Id.* at 91:12–23. When he was deposed, Martinez was unable to recall any of the characteristics of the person to whom N.D. pointed, but he remembers that N.D. was clearly referring to someone behind the bar. *Id.* at 91:11–92:3. Martinez testified that he also asked B.A. who sold him the liquor, and B.A. "pointed at the other bartender in the bar." *Id.* at 94:18–95:9. Martinez does not recall recording this information in his notes from that night, and there are no contemporaneous records that demonstrate that N.D. and B.A. made these alleged identifications. *Id.* at 92:4–12, 95:11–14.

N.D. disputes Martinez's account. Though he acknowledges that he told Martinez his age, he claims that he did not point to the person who sold him the drink or otherwise identify that person to Martinez. N.D. Dep. 12:21–13:11. N.D. testified that Martinez handcuffed him and detained him "right on the spot," immediately after he admitted that he was underage and in

---

[3] Though N.D. initially testified that he does not recall whether he got the drink from the bar, N.D. Dep. 10:6–8, he later testified that he "never attempted to get a drink at the bar" because he was not in possession of a wristband, *id.* at 26:11–20.

possession of alcohol. *Id.* at 12:3–8. N.D. also testified that he was standing with B.A., his cousin, the entire time that both young men were being questioned by Martinez. *Id.* at 12:12–17. However, when he was asked whether he "notice[d] [B.A.] identifying anybody [to Officer Martinez], pointing to people around the bar," N.D. did not answer directly, responding instead that "[y]ou would have to ask [B.A.]" that question. *Id.* at 13:18–20. According to N.D., B.A. was also handcuffed and detained "right away." *Id.* at 14:3–7. B.A. was not deposed for this lawsuit and he has not submitted a declaration or affidavit at any point during the course of discovery. *See* Pls.' Opp'n 5 & n.2, ECF No. 41.

After speaking with N.D. and B.A., Martinez returned to the bar and told Debra and Janeka that they were under arrest for selling alcohol to underage customers. Martinez Dep. 98:8–18; D. Creese Dep. 30:21–31:19; *see also* J. Creese Dep. 40:11–24. Both women denied serving alcohol to minors. Defs.' 56.1 ¶ 21. Specifically, Janeka testified that she told Martinez that "no one sold minors any liquor," and she explained that no alcohol had been sold at all "from the time [Martinez] walked over to the bar" until the time that he returned to arrest the two women. J. Creese Dep. 40:17–24. Debra testified that she also told Martinez that neither of the women sold alcohol to minors, and that the bar had been closed since Martinez first arrived at Café Omar. D. Creese Dep. 31:12–19. Despite their protestations, Martinez handcuffed Debra and Janeka and both women were transported to the 67th police precinct for processing. Martinez Dep. 102:2–103:4; D. Creese Dep. 39:23–41:17; J. Creese 45:13–22. They were kept in a cell for several hours, before they were transported to central booking the following day. D. Creese Dep. 41:18–42:2; J. Creese Dep. 47:15–48:1.

Meanwhile, N.D. and B.A. were also taken to the police precinct. N.D. Dep. 16:8–10. Martinez testified that he does not know how N.D. and B.A. ended up at the precinct, and he does

not recall having any further conversations with the two young men that night. Martinez Dep. 174:19–175:24.[4] At some point, however, someone at the precinct asked N.D. to complete an affidavit. N.D. Dep. 20:14–17; *see also* N.D. Aff. of Sale.[5] N.D.'s affidavit states that he is 19-years-old. *See* N.D. Aff. of Sale. On the form, N.D. states that he purchased "a cup [of] Hennessy, an alcoholic beverage, and paid $10 to a bartender, who is described as female, 5'6, black[,] at Café Omar." *Id.* The affidavit is signed and dated. *Id.* At the bottom of the affidavit, there is a warning in bolded capitalized letters, cautioning affiants that "FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE NEW YORK STATE PENAL LAW." *Id.*

When he was questioned about the affidavit during his deposition, N.D. testified that he completed the affidavit because he thought that it would "expedite" his release process. N.D. Dep. 22:12–23, 27:22–24. He stated that an officer told him that he would be released in 20 minutes if he complied. *Id.* at 23:2–12. However, he affirmed that no one told him that anything would happen to him if he did not complete the form. *Id.* at 41:2–11. As he completed the affidavit, the officer gave him certain instructions, directing him to write down the cost of the drink and the location of the bar on the affidavit. *Id.* at 28:14–21, 37:9–22. N.D. clarified, however, that he does not recall the officer telling him to write down any *specific* information on the form, *see, e.g.*, *id.* at 24:14–

---

[4] Martinez testified that he does not remember whether he handcuffed N.D. and B.A. before they were taken to the precinct, and he does not recall how they were transported to the precinct. He does recall, however, that both young men were issued summonses once they made it to the precinct. Martinez Dep. 96:12–97:25.
[5] The record does not clearly indicate when N.D. and B.A. completed the affidavit-of-sale forms. Taking the evidence in the light most favorable to plaintiffs, I assume that these forms were not completed until after plaintiffs were arrested. Therefore, I do not consider them in my analysis of whether defendants had probable cause to arrest the plaintiffs. However, though plaintiffs object to the circumstances in which the forms were completed, it is undisputed that the forms were signed and completed before plaintiffs were charged, and I therefore consider them in evaluating the malicious prosecution claims. *See, e.g.*, Pls.' Opp'n 11–14 (arguing that, despite the existence of the affidavits, defendants did not have probable cause to initiate plaintiffs' prosecution).

23, 28:14–21, 29:13–22, and he testified that the officer told him to complete the document "with the information [N.D.] had at the time," *id.* at 31:20–23. N.D. further testified that he does not recall the officer directing him to write that he purchased the drink from a bartender, *id.* at 24:14–23, and he does not believe that he lied anywhere on the form, *id.* at 27:22–28:1; *see also id.* at 32:4–15 ("Q: Is that information the officer gave you, this information about the bartender being female and 5'6? . . . A: The officer didn't give me that information.").

Upon further questioning, N.D. testified that he was "instructed on putting something down on this paper," but he could not recall the nature or content of those instructions. *Id.* at 37:13–22 ("I can't tell you, specifically, which—like whether it was the bartender part, the female, 5'6 part, but I know that I had to follow certain instructions like under the premise that I would be getting out."). He testified that he recalled seeing a black female bartender at Café Omar that night, but he does not remember noticing her height at the time. *Id.* at 34:14–35:2; *see also* Defs.' 56.1 ¶ 9. Finally, when asked whether it would be "fair to say that someone gave [him] [the bartender's] height," he responded, "Is it fair, yeah, it would be fair, I guess." N.D. Dep. 40:16–20.

B.A. also completed a sworn affidavit while at the precinct. *See* Defs.' 56.1 ¶ 18; B.A. Aff. of Sale. B.A's affidavit states that he was 18-years-old on March 19, 2016. B.A. Aff. of Sale. It further states that B.A. purchased "Hennessy, an alcoholic beverage, and paid $10.00 to a bartender, who is described as female, 5'5, old lady[,] at Café Omar." B.A. Aff. of Sale. Like N.D.'s affidavit, B.A.'s affidavit is signed, and it contains a warning at the bottom cautioning affiants that any false statements "are punishable as a class A misdemeanor." *Id.* Janeka is a 5'8" black woman. *See* Defs.' 56.1 ¶ 15; Jaffe Decl. Ex. G, ECF No. 36-7. At the time of her arrest, she was 30-years-old. *See* Jaffe Decl. Ex. G. Her mother, Debra, was 64-years-old at the time of her arrest, and she is a 5'6" black woman. *See* Defs.' 56.1 ¶ 19; Jaffe Decl. Ex. H, ECF No. 36-8.

Janeka was charged with selling alcohol to an underage person in violation of section 65 of New York's Alcohol and Beverage Control Law, which forbids the sale of alcoholic beverages to "[a]ny person, actually or apparently, under the age of twenty-one years." *See* Jaffe Decl. Ex. J, ECF No. 36-10 ("Janeka Creese Certificate of Disposition"). She accepted an adjournment in contemplation of dismissal, and the charge against her was dismissed thereafter on September 16, 2016. *See* Janeka Creese Certificate of Disposition; Defs.' 56.1 ¶ 26. Debra was also charged with selling alcohol to an underage person. *See* Rameau Decl., Ex. 5, ECF No. 40-5. The charge against Debra was dismissed outright, by motion of the district attorney, on March 19, 2016. *Id.*

Plaintiffs filed this lawsuit on June 16, 2017, originally asserting ten claims against the defendants. *See* Compl. ¶¶ 41–92, ECF No. 1. Today, the following claims remain in this lawsuit: federal claims for false arrest, malicious prosecution, denial of the right to a fair trial, malicious abuse of process, and failure to intervene, and a state-law claim for malicious prosecution.[6]

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A material fact is one that "can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). A genuine dispute is one that can "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In performing this analysis, I must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Gallo v. Prudential*

---

[6] In their opposition, plaintiffs withdraw the four other claims originally asserted: state-law false arrest, municipal liability under *Monell*, state-law assault and battery, and negligent hiring, retention, and supervision. Pls.' Opp'n 1. Further, as I explain below, plaintiffs fail to address the defendants' arguments for dismissal of two of the claims that they have not explicitly withdrawn: malicious abuse of process and failure to intervene. Because I conclude that plaintiffs' failure to address these claims constitutes abandonment, and I am persuaded by defendants' other arguments for dismissal, I grant defendants' motion for summary judgment on these claims.

*Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). "If, in this generous light, a material issue is found to exist, summary judgment is improper, and the case must proceed to trial." *Nationwide Life Ins. Co v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. 1999) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985)).

The moving party may demonstrate that there is no genuine dispute "by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223–24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If this burden is met, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). "Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Bacchus Assocs. v. Hartford Fire Ins. Co.*, 766 F. Supp. 104, 108 (S.D.N.Y. 1991). "The nonmoving party cannot defeat summary judgment by 'simply show[ing] that there is some metaphysical doubt as to the material facts,' or by a factual argument based on 'conjecture or surmise.'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (alteration in original) (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); then quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)). If "no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

## DISCUSSION

Defendants moved for summary judgment on all of plaintiffs' claims. Because I conclude that there are no genuine disputes of material fact, I grant defendants' motion in its entirety.

### I.     False Arrest

Both plaintiffs allege that they were falsely arrested by Officer Martinez on March 19, 2016, in violation of 42 U.S.C. § 1983. *See* Compl. ¶¶ 41–43. "The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York law." *Douglas v. City of New York*, 595 F. Supp. 2d 333, 339–40 (S.D.N.Y. 2009). Specifically, "a plaintiff must show that (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." *Id.* at 340. An arrest is justified if there was probable cause to believe that the person being arrested committed a crime. *See Weiner v. McKeefery*, 90 F. Supp. 3d 17, 28–29 (E.D.N.Y. 2015); *Bryant v. Rudman*, 933 F. Supp. 270, 274 (S.D.N.Y. 1996) ("There is no liability under § 1983 for false arrest . . . if the arresting officer had probable cause to arrest the plaintiff.").

Probable cause exists when a police officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). The inquiry is based on the "totality of the circumstances." *Weiner*, 90 F. Supp. 3d at 29 (quoting *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989)). In determining whether the officer had probable cause, the court may consider only those "facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)). "The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." *Id.* (quoting *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985)); *see also Castro v. County of Nassau*, 739 F. Supp. 2d 153, 168 (E.D.N.Y. 2010) ("[A] suspect's

denials are insufficient to obviate probable cause." (citation omitted)). In establishing probable cause, a police officer is entitled to rely upon information obtained from an informant as long as there are no "circumstances [that] raise doubts as to the [informant's] veracity." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).

Defendants argue that Officer Martinez had either probable cause or arguable probable cause to arrest both plaintiffs. *See* Defs.' Br. 5–12, ECF No. 38. "Under federal law, a police officer is entitled to qualified immunity where '(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act.'" *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)). In the context of a false arrest claim, a defendant has qualified immunity if there was "'arguable' probable cause at the time of arrest." *Id.* Arguable probable cause is not equivalent to "'almost' probable cause." *Id.* Instead, "[a]rguable probable cause exists when 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Cerrone*, 246 F.3d at 202–03 (quoting *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997)). The denial of qualified immunity is appropriate only where an officer's judgment was "so flawed that no reasonable officer would have made a similar choice." *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995)).

### A. Officer Martinez is entitled to qualified immunity on Janeka Creese's false arrest claim.

In determining whether there was either probable cause or arguable probable cause for an arrest, "the court looks only to the information the arresting officer had at the time of the arrest."

*Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998)). Both parties agree that Officer Martinez was aware of the following information when he arrested Janeka: (1) Janeka was working as a bartender at Café Omar during the early-morning hours of March 19, 2016; (2) Janeka was standing behind the bar when Officer Martinez approached the bar area; and (3) a young man, N.D., who was standing approximately 15 feet away from the bar with a cup of alcohol, admitted to Martinez that he was under the age of 21. *See* Defs.' 56.1 ¶¶ 4–6, 11–12. According to Martinez, N.D. identified Janeka as the person who sold him alcohol before Officer Martinez arrested Janeka. *See* Martinez Dep. 91:16–23. Plaintiffs vehemently contest that this identification ever took place. *See* Pls.' 56.1 Resp. ¶ 8; N.D. Dep. 12:21–13:11, 24:24–25:3. Construing the evidence in the light most favorable to plaintiffs and assuming that N.D.'s in-person identification did not occur, I conclude that Janeka's arrest was supported by arguable probable cause.

When Officer Martinez learned that an underage customer at Café Omar was in possession of alcohol, he was "entitled to draw reasonable inferences from the facts [he] possess[ed] at the time of [the] seizure." *Cerrone*, 246 F.3d at 203. Here, it was entirely reasonable for Officer Martinez to believe that Janeka—who was working as a bartender on March 19, 2016, and who Officer Martinez observed behind the bar—had provided N.D. with the liquor he was holding that night. *See, e.g.*, *Minott v. Duffy*, No. 11 Civ. 1217(KPF), 2014 WL 1386583, at *10 (S.D.N.Y. Apr. 8, 2014) ("[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ." (quoting *Gaston v. City of New York*, 851 F. Supp. 2d 780, 788 (2012)); *Levy v. City of New York*, 935 F. Supp. 2d 575, 590–91 (E.D.N.Y. 2013) ("In establishing whether arguable probable cause existed, officers are entitled to draw reasonable inferences from the facts they possess[ed] . . . based upon their own experiences." (quotation marks and citation omitted)). N.D. was standing relatively close to the bar, in the open space surrounding the bar.

Martinez Dep. 86:18–87:6. Though N.D. could have acquired the alcohol through many other sources, "the fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." *Panetta*, 460 F.3d at 395. The question, then, is not whether Janeka is the *only* person who could have been responsible for selling N.D. alcohol; the question is whether an officer in Officer Martinez's position could have reasonably believed that Janeka was the responsible party. *See, e.g.*, *Cerrone*, 246 F.3d at 202–03. Based on the undisputed circumstances, I cannot conclude that it was objectively unreasonable for Officer Martinez to have believed that probable cause existed.[7]

Plaintiffs argue that Janeka's mere presence in the bar on March 19, 2016 was insufficient to establish probable cause or arguable probable cause for her arrest. *See* Pls.' Opp'n 7–10. They cite several cases in which courts held that bystanders were falsely arrested because there was an absence of evidence to establish that the arrested party was responsible for a crime. *See id.*; *see also Minott v. Duffy*, No. 11 Civ. 1217(KPF), 2014 WL 1386583, at *13 (S.D.N.Y. Apr. 8, 2014) ("[M]ere presence . . . at a scene of criminal activity . . . [does not] establish[] probable cause." (alterations in original) (quoting *People v. Flores*, 276 A.D.2d 710, 710 (N.Y. App. Div. 2000)); *Perez v. Duran*, 962 F. Supp. 2d 533, 539 (S.D.N.Y. 2013) (holding that "the recovery of drugs from a suspected buyer without evidence of any exchange between a suspected seller and a suspected buyer found to possess drugs" was insufficient to establish probable cause). Unlike *Perez* and *Minott*, this case involves an additional undisputed fact linking Janeka to the sale of liquor: Janeka was working as a bartender at Café Omar that night, where she was responsible for serving alcohol to patrons. Moreover, Janeka asserts that she was the *only* bartender that night, and

---

[7] Because the existence of arguable probable cause entitles defendants to dismissal on the false arrest claims, I need not decide whether there was actual probable cause to arrest Janeka. *Cf. Dewitt v. City of Troy*, No. 1:09-cv-16, 2010 WL 3312634, at *4–5 (N.D.N.Y. Aug. 19, 2010) (holding that there was either "probable cause, or arguable probable cause" to arrest plaintiff, without deciding which).

it is undisputed that Café Omar had only one bar within the establishment. The combination of Janeka's job and N.D.'s admission regarding his age gave rise to a reasonable inference that Janeka sold N.D. alcohol that night. *Cf. Ornelas v. United States*, 517 U.S. 690, 699–700 (1996) ("[A] police officer views the facts through the lens of his police experience and expertise . . . . [and] may draw inferences based on his own experience in deciding whether probable cause exists.").

Likewise, the fact that Janeka denied selling alcohol to minors does not defeat probable cause or arguable probable cause for her arrest. *See Castro*, 739 F. Supp. 2d at 168; *see also Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) ("Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury."). And while N.D. testified in his deposition that he "never attempted to get a drink at the bar" because he was not in possession of a wristband, N.D. Dep. 26:11–20, this too is immaterial. N.D.'s disputed recollection and denials years after his arrest do not determine whether it was reasonable for Officer Martinez to believe that Janeka had committed a crime at the *time* of the arrest. *Cf. Peterson*, 995 F. Supp. at 313 ("The validity of an arrest does not depend upon an ultimate finding of guilt or innocence."). Because I conclude that Martinez's conclusions were reasonable in the moment based on the undisputed facts in the record, I grant defendants' motion on Janeka's false arrest claim.

### B. There was at least arguable probable cause for Officer Martinez to arrest Debra Creese.

Taking the facts in the light most favorable to plaintiffs, I also conclude that there was at least arguable probable cause for Officer Martinez to arrest Debra. Before Debra was arrested, B.A. admitted that he was under the age of 21, and he was holding a cup of liquor near the bar. Martinez Dep. 94:7–17. Moreover, Martinez testified that B.A. identified Debra as the person who sold him the alcohol when he "pointed at the other bartender in the bar." *Id.* at 94:18–95:9. There

is no real dispute that this identification occurred prior to Debra's arrest. Though plaintiffs insist that B.A. could not have identified Debra as the person who sold him liquor, they cite no admissible evidence to dispute Martinez's version of the facts.[8] The fact that N.D. testified that he and B.A. were both handcuffed "right away," N.D. Dep. 14:3–7, does not mean that B.A. could not have identified Debra. Furthermore, N.D. explicitly testified that he did not have personal knowledge regarding whether B.A. identified the person who sold him liquor, stating instead that B.A. would have to answer that question. *Id.* at 13:18–20. This testimony falls far short of establishing a genuine dispute of fact regarding B.A.'s identification of Debra. *See, e.g.*, *Wilde v. CSX Transp., Inc.*, No. 14-CV-50S, 2016 WL 7438839, at *3 n.4 (W.D.N.Y. Dec. 27, 2016) ("[I]n opposing a motion for summary judgment, the non-moving party must do more than show that there is 'some metaphysical doubt as to the material facts.'" (quoting *McClellan*, 439 F.3d at 144)); *Bacchus Assocs.*, 766 F. Supp. at 108 ("Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact.").

It is true that the parties dispute exactly where Debra was positioned when Martinez first approached the bar. Debra insists that she was sitting on the outside of the bar at all times, and that she never assisted her daughter with her bartending duties. *See* D. Creese Dep. 20:23–21:11, 25:19–26:15; *see also* J. Creese Dep. 39:13–17; Pls.' 56.1 Resp. ¶ 17. Martinez, on the other hand, testified that he saw "two females at the bar," and suggested that both women were "behind" the

---

[8] Plaintiffs admit that B.A. was not deposed and did not submit an affidavit in connection with this lawsuit. *See* Pls.' Opp'n 5 & n.2. However, plaintiffs allege that B.A. told plaintiffs' counsel during a "video conference" that "he never identified Debra Creese as having sold him alcohol." *Id.* at 5. This is plainly insufficient to defeat a motion for summary judgment, as it is inadmissible hearsay that is unsupported by any evidence in the record. *See Nyack v. S. Conn. State Univ.*, 424 F. Supp. 2d 370, 374 ("A party 'cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial.'" (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985))). Therefore, I do not consider this assertion in ruling on defendants' motion. *Id.*

bar when he approached them. Martinez Dep. 65:20–66:2, 69:6–8; 85:20–23, 104:6–12. He also testified that when B.A. identified Debra, he "pointed at the other bartender *in* the bar." *Id.* at 94:19–21 (emphasis added); *see also* 95:3–9. All parties agree, however, that at the time of the arrest, the bar area was relatively empty, and Debra and Janeka were among the only people near the bar. *See* Defs.' 56.1 ¶ 17; *see also* D. Creese Dep. 32:24–33:15; Pls.' 56.1 Resp. ¶ 17 (disputing defendants' contention that Janke and Debra "were the only non-police officers at the bar," but only because plaintiffs insist that Debra "was sitt[ing] outside the bar" and not in the bar).

Even assuming that Debra remained seated outside the bar at all times, it was objectively reasonable for Officer Martinez to believe that he had probable cause to arrest her. Given Debra's close proximity to the bar and to Janeka—who was indisputably standing behind the bar—it was reasonable for Officer Martinez to believe that Debra was affiliated with Café Omar that night. Further, though Martinez's recollection of B.A.'s identification during his deposition is hazy and vague, *see id.* at 89:13–90:6, 94:19–21, 125:20–126:8 (testifying that B.A. "pointed at the other bartender," but that he could not remember B.A.'s appearance or any details about Debra or Janeka), qualified immunity does not hinge on the officer's recollection of an event during a deposition held years after the arrest. It is also immaterial that Martinez failed to document B.A.'s identification of Debra at the time of the arrest, because plaintiffs cite no admissible evidence that would dispute the fact that this identification occurred. *See* Defs.' Reply 9–10, ECF No. 44. Instead, Martinez is entitled to qualified immunity as long as the undisputed facts made it objectively reasonable for him to believe that there was probable cause to arrest Debra. *See Jenkins*, 478 F.3d at 87. Here, B.A.'s identification, paired with Debra's proximity to the bar, supported a reasonable inference that Debra was responsible for selling alcohol to an underage

customer. *See Cerrone*, 246 F.3d at 203. As a result, I conclude that Martinez is entitled to qualified immunity on Debra's false arrest claim.

## II.     Malicious Prosecution

Plaintiffs seek to assert a federal and state-law malicious prosecution claim on behalf of Debra. "The elements of a malicious prosecution claim brought under § 1983 are substantially the same as [a] malicious prosecution claim[] brought under New York law." *Riccio v. New York*, 859 F. Supp. 2d 480, 486 (E.D.N.Y. 2012) (citing *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984)). To state a claim under New York law, "four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti v. N.Y.C. Trans. Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

Plaintiff's complaint—which was never amended—asserts malicious prosecution claims on behalf of Janeka but not on behalf of Debra. *See* Compl. ¶¶ 71–81. However, as both parties acknowledge, a malicious prosecution claim cannot be maintained on behalf of Janeka because she accepted an adjournment in contemplation of dismissal, or an ACD. *See* Defs.' Br. 13–14; Pls.' Opp'n 11–12 n.3; *see also Riccio*, 859 F. Supp. 2d at 487 ("An adjournment in contemplation of dismissal ('ACD') does not qualify as a favorable termination." (citing *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997))). Plaintiffs argue that they should be able to amend their complaint to assert this claim, while defendants argue that the claim is now time-barred and the amendment should not be deemed to "relate back" to the initial filing of the complaint. *See* Pls.' Opp'n 11–12 n.3; Defs.' Reply 2–6.

Because there was probable cause for Debra's prosecution, I need not resolve the parties' dispute regarding the relation-back doctrine. "[I]f probable cause existed at the time of the arrest and the plaintiff offers no additional facts to show that it dissipated post-arrest, then the claim for

malicious prosecution cannot be maintained." *Jimenez v. City of New York*, No. 15 Civ. 3257 (BMC), 2016 WL 1092617, at *4 (E.D.N.Y. Mar. 21, 2016). I have already concluded that defendants are entitled to qualified immunity on Debra's false arrest claim. At the time that Debra's prosecution was initiated, defendants had even more information supporting probable cause—or, in the alternative, arguable probable cause—for Debra's prosecution. *See, e.g.*, *Costello v. Milano*, 20 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) ("[A]n officer is entitled to qualified immunity from suit on a claim of malicious prosecution if there was 'arguable probable cause' to charge the plaintiff."). Before Debra was charged, it is undisputed that B.A. completed a sworn affidavit in which he stated that he paid $10 for an alcoholic drink to a black woman described as an "old lady" who was 5'5". *See* Defs.' 56.1 ¶ 18; Pls.' 56.1 Resp. ¶ 18. It is also undisputed that Debra's actual height is 5'6" (shorter than her daughter, Janeka, who is 5'8") and that she was 64-years-old at the time of her arrest. *See* Pls.' 56.1 Resp. ¶¶ 15, 19. B.A.'s sworn statement contains an "additional indicia of reliability" because it acknowledges "that any false statement made to police would subject the author to criminal penalties." *Weiner*, 90 F. Supp. 3d at 30. Though plaintiffs insist that B.A.'s affidavit was fraudulently obtained or fabricated, *see* Pls.' Opp'n 12-14, they cite no admissible evidence to support their assertion or to dispute defendants' version of the events. Therefore, plaintiffs' malicious prosecution claims are dismissed.

### III.    Denial of the Right to a Fair Trial

Plaintiffs argue that defendants fabricated evidence by coercing N.D. and B.A. to falsely identify plaintiffs as the people who sold them alcohol, thus depriving them of their right to a fair trial. *See* Pls.' Opp'n 11–16. "The Second Circuit has held that a person has 'the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.'" *Sanders v. City of New York*, No. 12 CV 113(PKC)(LB), 2015 WL 1469514, at *17 (E.D.N.Y. Jan. 7, 2015) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir.

2000), *adopted by* 2015 WL 1469506 (E.D.N.Y. Mar. 30, 2015). "A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 392 (E.D.N.Y. 2013) (quoting *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012)). "[A]ll of the elements [of the claim] can be satisfied regardless of whether or not the plaintiff was ultimately tried." *Manigault v. City of New York*, No. 11 Civ. 4307 (AJN), 2012 WL 13049173, at *6 (S.D.N.Y. Apr. 19, 2012). Furthermore, "[t]he existence of probable cause to arrest and prosecute is not a complete defense to a fair trial claim." *Hoyos*, 999 F. Supp. 2d at 392. To sustain such a claim, however, the plaintiff must "identify how the[] alleged fabrications *resulted* in a deprivation of . . . liberty." *Id.* at 394 (emphasis added). It is not sufficient to demonstrate that a deprivation of liberty "resulted generally from [the] prosecution"; instead, the plaintiff must demonstrate that the alleged fabrications caused a violation of her constitutional rights. *Id.*

For the same reason that plaintiffs cannot sustain a malicious prosecution claim on behalf of Debra, they have also failed to identify any genuine dispute that would give rise to Debra's claim for denial of the right to a fair trial. Plaintiffs cite no admissible evidence to suggest that any aspect of the evidence implicating Debra was fabricated; on the contrary, the record reveals that B.A. signed a sworn affidavit in which he attested that an older woman matching Debra's physical characteristics sold him alcohol. *See* B.A. Aff. of Sale; Defs.' 56.1 ¶ 18. Beyond plaintiffs' general and conclusory denials, there are no facts in the record that would support the conclusion that B.A.'s identification or affidavit were fabricated by the defendants.

With respect to Janeka's claim, plaintiffs argue that N.D.'s deposition testimony reveals that N.D. was coerced into implicating Janeka on his affidavit. *See* Pls.' Opp'n 11–16. They argue

that N.D. completed the affidavit because he was "motivated by the defendant's promise to expedite his release from custody," and that he was "instructed" on how to complete the affidavit by Officer Martinez. *Id.* at 4. Plaintiffs also argue that N.D.'s assertion that he never identified Janeka in the bar demonstrates that Martinez fabricated the alleged in-person identification. I am unpersuaded by plaintiffs' arguments that Martinez fabricated evidence against Janeka. Furthermore, even if plaintiffs did raise a genuine dispute of material fact regarding this claim, they have failed to demonstrate that any alleged fabrications caused Janeka to suffer a deprivation of liberty. As a result, I grant defendants' motion for summary judgment as to this claim.

As an initial matter, there is no evidence in the record to indicate *which* officer allegedly instructed N.D. to complete the affidavit, and N.D. did not identify Officer Martinez at any point in his deposition. *See* N.D. Dep. 23:2–12 (testifying that "the officer" asked him to complete the affidavit). Even assuming that N.D. was referring to Officer Martinez, N.D.'s deposition does not demonstrate that his affidavit was coerced or otherwise fraudulent. Indeed, N.D. himself clearly testified that he is "not saying that [he] lied anywhere" on the form. *Id.* at 27:22–28:2.[9] N.D.'s general assertion that he was given "instructions" to complete the affidavit so that he could be released earlier does not indicate that the officers *told* him what to write. *See id.* at 29:17–22 (testifying that he "do[esn't] recall" being told what to write on the form). This testimony does not

---

[9] N.D.'s deposition testimony is inconsistent and unclear, and he often changed his answers in response to additional questioning by plaintiffs' counsel. *Compare* N.D. Dep. 32:4–15 ("Q: Is that information the officer gave you, this information about the bartender being female and 5'6? . . . A: The officer didn't give me this information."), *with id.* at 40:16–20 ("Q: Is it fair to say that someone gave you [the bartender's] height . . .? A: Is it fair, yeah, it would be fair, I guess."). However, for the purposes of a motion for summary judgment, the court must credit the portions of testimony that support the non-movant's arguments. *See DeAndrade v. K.J. Mountain Corp.*, No. 11 Civ. 00011(ER), 2013 WL 6500233, at *7 (S.D.N.Y. Dec. 11, 2013); *Waddlington v. City of New York*, 971 F. Supp. 2d 286, 293–94 (E.D.N.Y. 2013) ("[I]nconsistencies . . . do not automatically preclude summary judgment."). As I explain below, even construing the facts in the light most favorable to plaintiffs, N.D.'s deposition does not support the assertion that his affidavit was fabricated or that this alleged fabrication caused plaintiffs to suffer a deprivation of liberty.

create a genuine dispute regarding whether N.D. was forced to include fabricated statements on the form. *See, e.g.*, *Wilde*, 2016 WL 7438839, at *3 n.4 (denouncing the plaintiffs' "attempt to create a factual dispute by taking deposition testimony out of context and misconstruing it to support their position"); *Faruki v. City of New York*, No. 10 Civ. 9614 LAP, 2012 WL 1085533, at *5 (S.D.N.Y. Mar. 30, 2012) ("Plaintiff's statement that she did not recall . . . is insufficient to create a genuine dispute on that material issue.").

Construing N.D.'s testimony in the light most favorable to plaintiffs, an officer at the precinct provided N.D. with Janeka's height, thus assisting N.D. in completing his affidavit. *See* N.D. Dep. 40:16–20 (testifying that it would be "fair" to say that "someone gave [him] [Janeka's] height").[10] Even if this amounted to a "fabrication," *but see id.* at 27:22–28:2 (testifying that he is "not saying that [he] lied anywhere" on the form), it does not support Janeka's claim that she was denied her right to a fair trial. Plaintiffs fail to demonstrate how the provision of Janeka's height to N.D. "proximately cause[d] [Janeka] to suffer a deprivation of liberty." *Ashley v. City of New York*, No. 14-CV-5559 (NGG), 2017 WL 9487192, at *7 (E.D.N.Y. Apr. 17, 2017), *adopted by* 2017 WL 2972145 (E.D.N.Y. July 12, 2017). Plaintiffs cannot sustain their claim because they fail to identify any "further deprivation" that was caused by the alleged fabrication. *Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017). As I've already held, there was at least arguable probable cause to arrest Janeka based on her role as a bartender and N.D.'s admission that he was under 21 and in possession of alcohol. Thus, the deprivation of liberty caused by her arrest was supported by probable cause, and plaintiffs fail to identify a "separate harm" that was caused by

---

[10] N.D. testified earlier in his deposition that he could not recall whether the officer instructed him to put any other information in his affidavit, such as "the bartender part [or] the female, 5'6 part." N.D. Dep. 37:13-22. However, he also testified that he remembers seeing Janeka that night, and he noted that she was a black woman who was working at the bar that night. *Id.* at 34:14–35:2. Thus, plaintiffs' suggestion that this information was fabricated or otherwise provided by the defendants is nothing more than "conjecture or surmise," *McClellan*, 439 F.3d at 144, unsupported by any facts in the record.

the alleged fabrication of N.D.'s identification. *Id.* Likewise, Janeka's prosecution was supported by probable cause because N.D. completed a sworn affidavit under penalty of perjury in which he identified Janeka as the person who sold him alcohol. *See Weiner*, 90 F. Supp. 3d at 30. There is no evidence in the record to support plaintiffs' assertion that the officer's provision of Janeka's height was material in causing a further deprivation or a constitutional injury sufficient to give rise to a claim for the denial of the right to a fair trial. *See Polanco v. City of New York*, No. 14 Civ. 7986 (NRB), 2018 WL 1804702, at *11–12 (citing *Ganek*, 874 F.3d at 90). Thus, I grant defendants' motion for summary judgment as to this claim.

## IV.    Malicious Abuse of Process and Failure to Intervene

Finally, plaintiffs assert claims for malicious abuse of process and failure to intervene, but they fail to address defendants' arguments for dismissal of these claims in their opposition to defendants' summary judgment motion. *See* Defs.' Reply 2–3. I agree with defendants that plaintiffs' silence on these claims "signals . . . abandonment." *Id.* (quoting *Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 390 (E.D.N.Y. 2013)). Moreover, both claims are meritless. Plaintiffs fail to identify any material dispute that would establish that defendants had a "collateral objective" in prosecuting plaintiffs, thus defeating plaintiffs' malicious abuse of process claim. *See Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017).

Likewise, plaintiffs cannot sustain their failure to intervene claim because such a claim can proceed only in connection with a valid underlying constitutional claim. *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012) ("[A] failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim.").

In this case, I have already held that plaintiffs' underlying claims all fail; therefore, defendants' motion for summary judgment on the failure to intervene claim is granted.[11]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in full, and all claims against the defendants are dismissed. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

Date: July 23, 2019
      Brooklyn, New York

_____/s/_____
Allyne R. Ross

---

[11] Moreover, "a defendant cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop himself from committing that violation." *Case v. City of New York*, 233 F. Supp. 3d 372, 402 (S.D.N.Y. 2017) (internal quotation marks and citation omitted). Plaintiffs do not identify any other defendants who could be liable for failing to intervene in Officer Martinez's alleged constitutional violations.